UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK A. SWIFT,<br><br>                    Plaintiff<br><br>          v.<br><br>PRIMECARE, INC., *et al.*,<br><br>                    Defendants. | CIVIL ACTION NO. 3:25-CV-02132<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Mark A. Swift, a pretrial detainee proceeding *pro se*, has filed a complaint pursuant to 42 U.S.C. § 1983, alleging that he has received inadequate medical care at the York County Prison. He also moves for appointment of counsel and preliminary injunctive relief.[1] (Doc. 4, Doc. 5). Pursuant to 28 U.S.C. § 1915A, the Court will permit Swift to proceed *in forma pauperis* on a claim against a defendant he identifies as "Nurse Katelyn," but dismiss all other claims and deny his remaining motions without prejudice.

---

[1] Swift has also filed a letter (Doc. 11) in which he alleges that his counselor would not allow him to make photocopies of a document, but another counselor made copies on his behalf. The Court infers that because Swift "trust[s] no one" with his legal work, he wants to be permitted to use a copier on his own. However, Swift has no free-standing right to use a copier, except to the extent that denial of a copier leaves him unable to pursue a non-frivolous legal claim. *See*, *e.g.*, *Atwell v. Lavan*, 557 F. Supp. 2d 532, 554 (M.D. Pa. 2008) (citing *O'Connell v. Williams,* 241 Fed.Appx. 55 (3d Cir. 2007)). Regardless, Swift's letter does not request any specific relief from the Court.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

The complaint[2] indicates that at all relevant times, Swift was a pretrial detainee at the York County Prison. Swift alleges as follows: On June 6, 2025, he was "called to medical" for a complaint about swelling and numbness on his left side. He waited "for a while without being seen," and his arm began to feel numb. He then lost consciousness and woke up in a hospital, where he was told he had a stroke, and remained hospitalized for five days.

After he returned to the prison, Swift went to medical four days in a row seeking to check his sodium levels, which he alleges were "125 and [have] to be 135-145."[3] Nurse Katelyn allegedly "kept sending [Swift] back to the Block after making [him] wait an hour at medical." Nurse Katelyn allegedly "did not perform any duties" other than recommending that he eat more salt. She then called to the block and instructed a correctional officer to "put a note on the computer to not send [Swift] to medical again." Swift alleges that, since September 21, he has been suffering from swollen and numb legs due to low sodium levels. He asserts claims under the First, Eighth, and Fourteenth Amendments against an unspecified number of defendants.[4] He also seeks leave to proceed *in forma pauperis* (Doc. 2), requests appointment of counsel (Doc. 4), and moves for preliminary injunctive relief (Doc. 5).

---

[2] The Court has also reviewed Swift's later-submitted exhibits, *see* (Doc. 9), to interpret the allegations in his complaint, but the exhibits are not themselves part of the complaint.

[3] To provide context for this allegation, the Court takes judicial notice that in general, "[a] healthy blood sodium level is between 135 and 145 millimoles per liter (mmol/L)." *See* Mayo Clinic – Diseases and Conditions, Hyponatremia, *https://www.mayoclinic.org/diseases-conditions/hyponatremia/symptoms-causes/syc-20373711* (last accessed Dec. 19, 2025).

[4] The complaint itself lists five defendants, but a "witness list" attached to the complaint appears to name 13 defendants. *See* (Doc. 1-1).

**II.     28 U.S.C. § 1915A SCREENING**

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). The court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

3

assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded,"

must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

      Swift brings this complaint under 42 U.S.C. § 1983. Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence,'" and cannot be premised on the operation of *respondeat superior*. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

**III.   DISCUSSION**

    A.   FOURTEENTH AMENDMENT

Because Swift is a pretrial detainee, his claims of inadequate medical care fall under the Fourteenth Amendment, rather than the Eighth Amendment.[5] See *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Nonetheless, pretrial detainees' Fourteenth Amendment medical care claims are subject to "the same standard used to evaluate claims brought under the Eighth Amendment." See *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023); *Tressler v. Ctr. Cnty.*, No. 1:24-CV-00456, 2024 WL 4989315, at *8-9 (M.D. Pa. Dec. 5, 2024). Specifically, a plaintiff can state a claim by alleging (1) a serious medical need; (2) that the defendant was deliberately indifferent to that need; and (3) that the deliberate indifference caused harm to the plaintiff. See *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). Courts have found deliberate indifference "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Although the complaint does not explain the connection between Swift's prior stroke and his subsequent medical issues, it supports a plausible inference of a serious medical need, in the form of low sodium levels that allegedly cause swelling and numbness in his legs. The only individual who is specifically alleged to have denied Swift medical care for that need is Nurse Katelyn. Despite knowing that her recommendation to eat more salt was ineffective,

---

[5] Swift also asserts a First Amendment violation, but he does not explain the basis for such a claim and none is apparent from the complaint.

6

Nurse Katelyn allegedly instructed that Swift should not be returned to the medical department, and it is plausible to infer that this instruction prevented Swift from receiving needed medical treatment. *Rouse*, 182 F.3d at 197; *see also White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) (allegations that a medical professional knowingly persisted in an ineffective course of treatment suggest deliberate indifference).

However, Swift's complaint suggests no other viable defendants at this stage. He names PrimeCare, the corporate prison medical provider, but the complaint does not identify a specific policy, custom or practice that indicates wrongdoing by PrimeCare, as opposed to the individual decisions of medical provider(s). *See Montanez v. Price*, 154 F.4th 127, 142 (3d Cir. 2025) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). He names several other individuals with supervisory roles at the prison, but a defendant's supervisory position does not indicate "personal involvement" sufficient to state a claim under Section 1983.[6] *Dooley*, 957 F.3d at 374. He also names a series of John/Jane Doe defendants, but does not explain these individuals' roles in his medical care or why they are liable for any alleged errors. To the extent discovery reveals additional defendants, Swift may seek leave to amend his complaint.

---

[6] Swift's vague statement that "the prison administration seem to wash their hands when situations and complaints arise, and they wish to ignore the patient's claims or point fingers at each other" does not explain how any particular defendant was personally involved in the alleged denial of medical care. To the extent he sought to state a claim based on allegedly inadequate responses to his prison grievances, mishandling of grievances would not itself demonstrate personal involvement in the underlying violation for Section 1983 purposes. *See Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006).

B. APPOINTMENT OF COUNSEL

Swift has also filed a motion for appointment of counsel. Unlike in a criminal case, a prisoner has no constitutional or statutory right to appointed counsel in a civil case. *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Under the *in forma pauperis* statute, however, a federal court may request that an attorney represent an indigent person on a *pro bono* basis. *See* 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

Under *Tabron*, a district court's appointment of counsel is discretionary and must be made on a case-by-case basis. *Tabron*, 6 F.3d at 157-58. Appointment of counsel for an indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984). The initial determination is whether the plaintiff's case has some arguable merit in fact and law. *Montgomery*, 294 F.3d at 499. If a plaintiff overcomes this threshold hurdle, other factors to be examined are:

> (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the claimant to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d at 499 (citing *Tabron*, 6 F.3d at 155-57).

The Court must also consider the availability of volunteer lawyers and the number of *pro se* litigants who request volunteer counsel. As the Third Circuit has observed:

> [W]e must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed

> counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

*Tabron*, 6 F.3d at 157.

The Court assumes for purposes of the motion that Swift's case has arguable merit in fact and law. However, his filings thus far indicate that, at this early stage, he can adequately describe the relevant facts, present his arguments, and gather evidence in support of his claims. *See Montgomery*, 294 F.3d at 499. Swift, like most *pro se* litigants, would likely benefit from an attorney, but he has not shown that this is a "special circumstance" in which he is unable to "present the facts and legal issues to the court." *Smith-Bey*, 741 F.2d at 26.

Although the defendant has not yet responded to the complaint, it is possible that this case may ultimately rest on credibility determinations, expert testimony, or complex medical issues. To the extent these details become apparent later in the litigation, the Court can reconsider appointment of counsel *sua sponte* or on a renewed motion by Swift. *See Woodham v. Sayre Borough Police Dep't*, 191 F. App'x 111, 116 (3d Cir. 2006). However, on the facts presented, he has not demonstrated the need for appointed counsel at this stage.

C. PRELIMINARY INJUNCTION

Finally, Swift has filed a motion for preliminary injunctive relief. (Doc. 5). The asserted basis for relief is not entirely clear, but Swift claims to be engaged in a dispute with a correctional officer, Daryman, who allegedly tried to "force [Swift] to sign off on" (*i.e.*, abandon) grievances, and has "target[ed Swift] about trivial dormitory policies." Swift, who is housed in a unit with sex offenders, asserts that Daryman could move him to a general population block where he would be at risk of harm from other prisoners, and seeks a

9

preliminary injunction "to maintain the status quo." However, this issue has no apparent connection to the medical care claim in his complaint. *See Ball v. Famiglio*, 396 Fed.Appx. 836, 837 (3d Cir. 2010) (because preliminary injunctive relief requires a likelihood of success on the merits of the complaint, "there must be a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint") (citation omitted). Moreover, the motion is not supported by evidence, and the allegation that C.O. Daryman "can move" him to the general population does not suggest that Swift "will suffer irreparable harm" without an injunction. *See Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (a movant must establish entitlement to preliminary injunctive relief, including imminent irreparable harm, by clear evidence).

### IV.   CONCLUSION

For the foregoing reasons, Swift will be permitted to proceed on a Fourteenth Amendment claim against Nurse Katelyn premised on the alleged denial of medical care, but all other claims will be dismissed, and his requests for appointment of counsel and preliminary injunctive relief will be denied without prejudice. An appropriate order follows.

Dated: December 19, 2025                                s/ Karoline Mehalchick
                                                        **KAROLINE MEHALCHICK**
                                                        **United States District Judge**